UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARWA BADR,

        *Plaintiff*,

        -against-

NEW YORK INSTITUTE OF TECHNOLOGY ET AL,

        *Defendants*.
------------------------------------------------------------------X

**MEMORANDUM AND ORDER**

2:24-cv-05333 (JMA) (JMW)

**A P P E A R A N C E S:**

    Stewart Lee Karlin
    **Stewart Lee Karlin, Law Group PC**
    111 John Street 22nd Floor
    New York, NY 10038
    *Attorney for Plaintiff*

    Douglas Peter Catalano
    Stefanie Robin Toren
    **Clifton Budd & DeMaria LLP**
    350 Fifth Avenue, Suite 6110
    New York, NY 10118
    *Attorney for Defendants*

**WICKS,** Magistrate Judge:

    Presently before the Court is Defendants' New York Institute of Technology ("NYIT") and NYIT-COM College of Osteopathic Medicine ("NYIT-COM" and collectively, "Defendants")[1] Motion to Stay discovery pending their anticipated Motion to Dismiss. (*See* ECF

---

[1] Defendants informed the Court that NYIT's College of Osteopathic Medicine, incorrectly named here in as "NYIT-COM College of Osteopathic Medicine," is a college within NYIT and is not a separate legal entity. (ECF No. 23 at 1.)

1

No. 23.) Plaintiff Marwa Badr (also known as Sarah Adams and hereinafter "Plaintiff") neither opposes nor consents to the motion for a stay. (*See* Electronic Order dated April 8, 2025.)

Although the motion to stay is, in effect, unopposed, the Court nonetheless undertakes a review to determine whether a stay is warranted, mainly because a request to stay litigation must be considered along with Rule 1's mandate that the Rules "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.  For the reasons set forth below, the Court concludes that a stay of discovery is warranted, and thus Defendants' motion is **GRANTED**.

## BACKGROUND

### A. *Factual Background*

The Court details the following background from the Amended Complaint. (ECF No. 19.) Plaintiff's suit arises from her time as a medical student at NYIT-COM from 2018 until March 22, 2022. (*Id.* at ¶¶ 12-14.)  Plaintiff, a Muslim woman originally from Egypt, was a fourth-year medical student, when she was expelled from her program two months before her scheduled graduation. (*Id.* at ¶¶ 6, 25.)  Plaintiff was part of the NYIT-COM's Émigré Physicians Program ("EPP"), "a unique initiative designed to retrain internationally educated doctors as a Doctor of Osteopathic Medicine in residency training." (*Id.* at ¶ 12.)  Plaintiff primarily alleges that she was expelled from the program due to the Defendants' discriminatory practices related to her religious and national origin. (*Id.* at ¶ 26.)  Plaintiff was informed that the reason for her dismissal was "[her] failure of the last clinical rotation at Cedar Sinai and the incident in another rotation at Catholic Health System." (*Id.* at ¶ 27.)

Plaintiff, however, disputes that this was the real reason for her dismissal; rather, she alleges that her expulsion was the result of a conspiracy between her medical school and the

2

Accreditation Council for Graduate Medical Education (ACCGME), aimed solely at covering up the "discriminatory practices in southern universities against" International Medical Graduates that she personally complained of in her prior medical program in Alabama. (*Id.* at ¶¶ 19-21, 28-32.) Plaintiff believes that her expulsion was a result of this conspiracy based on four reasons:

> (1) The disciplinary action started after she mentioned her prior expulsion from residency in the south, (2) NYIT-COM demonstrated a pattern of discriminating against Muslim Middle Eastern medical students who sought surgical specialties. Students from Egypt, Syria, and Pakistan, compared to non-Muslim students, were not under the same discriminatory treatment, (3) NYIT targeted the student, using a classmate who asked the student to convert to Christianity after expulsion, [and] (4) Capricious expulsion with evidence of external influence is the strongest evidence to support the systematic targeting of Muslims in educational settings. A sudden interruption of the Plaintiff's education defamed her character as a Muslim scholar.

(*Id.* at ¶ 47.) Based on this alleged discriminatory conduct, Plaintiff asserts one claim against the Defendants for a violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000(d), et seq. ("Title VI") and "any other cause(s) of action that can be inferred from the facts set forth herein." (*Id.* at ¶ 1.)

### B. *Procedural Background*

Plaintiff commenced this action on July 30, 2024. (ECF No. 1.) She then filed the Amended Complaint against all Defendants on November 22, 2024. (ECF No. 19.) On November 22, 2024, Defendants filed a letter motion requesting a Pre-Motion Conference for its proposed Motion to Dismiss pursuant to Fed. R. Civ. P.12(b)(6). (ECF No. 21.) On December 26, 2024, Plaintiff filed their opposition to the Pre-Motion Conference request. (ECF No. 22.) Although the Hon. Judge Azrack initially granted the Motion for a Pre-Motion Conference, the Court later waived the requirement and cancelled the conference on April 1, 2025, and setting a briefing schedule. (Electronic Order dated April 1, 2025.)

On April 7, 2025, Defendants subsequently moved to stay discovery pending the outcome of their proposed Motion to Dismiss (ECF No. 23.) At the most recent status conference held before the undersigned, on April 8, 2025, the parties informed the Court that (i) no discovery has occurred including initial disclosures, (ii) Counsel for Plaintiff alleged they are neither consenting to nor opposing Defendants' Motion to Stay, and (iii) Counsel for Plaintiff also indicated that they intend to rely on the allegations of the Amended Complaint and will not be seeking further leave to amend. (*See* Electronic Order dated April 08, 2025.) Accordingly, now before the Court is Defendants' Motion to Stay (ECF No. 23.)

## **THE LEGAL FRAMEWORK**

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Thomas v. N.Y. City Dep't of Educ.*, No. 09-CV-5167, 2010 WL 3709923, at *2 (E.D.N.Y. Sept. 14, 2010) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "Under Fed. R. Civ. P. 26(c), a district court may stay discovery during the pendency of a dispositive motion for 'good cause' shown." *Hearn v. United States*, No. 17-CV-3703, 2018 WL 1796549, at *2 (E.D.N.Y. Apr. 16, 2018). The mere filing of a dispositive motion, in and of itself, does not halt discovery obligations in federal court. That is, a stay of discovery is not warranted, without more, by the mere pendency of a dispositive motion. *Weitzner v. Sciton, Inc.*, No. CV 2005-2533, 2006 WL 3827422, at *1 (E.D.N.Y. Dec. 27, 2006). Rather, the moving party must make a showing of "good cause" to warrant a stay of discovery. *Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, 236 F.R.D. 113, 115 (E.D.N.Y. 2006). In evaluating whether a stay of discovery pending resolution of a motion to dismiss is appropriate, courts typically consider: "(1) whether the defendant has made a strong showing that the plaintiff's

4

claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." *Id.* (citation omitted). "Courts also may take into consideration the nature and complexity of the action, whether some or all of the defendants have joined in the request for a stay, and the posture or stage of the litigation." *Id.* (citation omitted).

It is against this backdrop that the Court considers the present application.

## ANALYSIS

### I.  *Defendants' Showing that Plaintiff's Claims are Unmeritorious*

Defendants assert that their stay of discovery should be granted because their anticipated motion to dismiss will contain "potentially dispositive arguments that cast serious doubt on the viability of most, if not all, of Plaintiff's claims." (ECF No. 23-1 at 4.) The pre-motion letter indicates Defendants will move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff has failed to state a claim for Title VI discrimination. (ECF No. 20.) As previously noted, Plaintiff neither opposes nor consents to the motion for a stay. *See* Electronic Order dated April 8, 2025. As set forth below, the Court finds Defendants have made the requisite strong showing that Plaintiff's claims are unmeritorious to justify a stay of discovery.[2]

Generally, to survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly

---

[2] The Court's consideration and analysis of the arguments set forth in the motion to dismiss is purely for purposes of weighing whether a stay should be granted in light of Fed. R. Civ. P. 1. This analysis should not be construed as the Court prejudging the merits of the anticipated motion to dismiss.

dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  When considering a motion to dismiss under 12(b)(6), the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  However, this tenet does not apply to legal conclusions or "threadbare recitals of a cause of action's elements." *Ashcroft v. Iqbal*, 556 U.S. at 663.  Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  More is required.

It is clear that under Title VI, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Salem v. New York Univ.*, No. 22-CIV-5112 (VEC) (SLC), 2023 WL 8438713, at *6 (S.D.N.Y. Sept. 15, 2023), *report and recommendation adopted*, No. 22-CV-5112 (VEC), 2023 WL 8253026 (S.D.N.Y. Nov. 29, 2023) (quoting 42 U.S.C. § 2000d). For a claim to survive under Title VI, particularly in the education context, "direct evidence of discriminatory conduct [is required]." *Koumantaros v. City Univ. of New York*, No. 03 CIV10170GEL, 2007 WL 840115, at *8 (S.D.N.Y. Mar. 19, 2007). In cases where no such evidence exists, a plaintiff can show:

> (1) she is a member of a protected class; (2) she suffered an adverse action in pursuit of her education by defendant; (3) she was treated differently from similarly situated students who are not members of the protected class; and (4) she was qualified to continue in her educational pursuit.

*Id.* Importantly, the discrimination alleged must have been intentional. *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001) (collecting cases).

6

### A. *Defendants' Pre-Motion Letter*

Defendants state that Plaintiff's claim of national origin and religious discrimination should be dismissed as "she merely speculates that her dismissal from the Program was attributable to discriminatory animus based on her national origin and religion or retaliatory animus concerning her alleged complaints about the Southern Schools and ACGME."[3] (ECF No. 23-1 at 4-5.) Additionally, Defendants contend that Plaintiff's religious discrimination claim should be dismissed because Title VI prohibits only discriminatory action based on race, color, or national origin. (*Id.* at 5.) Defendants further assert that even if Title VI applies, Plaintiff's allegations fail to state an intentional discrimination. Specifically, Defendant argues that Plaintiff has not plead any factual allegations that NYIT or its decisionmakers "harbored any national origin or religious bias" to establish a finding of intentional discrimination against her "because of her Egyptian national origin or Muslim religion when it dismissed Plaintiff from the Program." (*Id.* at 5-6.) Although Plaintiff does identify one statement in which a faculty member told her to "'Return to Egypt' where you came from'" after her expulsion (ECF No. 19 at ¶ 104), Defendants proffer that this is not relevant to the inquiry as the Plaintiff did not allege that this faculty member "had anything to do with her dismissal from the Program." (ECF No. 23-1 at 6.)

Finally, Defendants assert that Plaintiff includes conclusory allegations in her Amended Complaint and fails to assert a plausible basis that Plaintiff's nationality and religious beliefs was the motiving factor in their decision to dismiss her from the program. (*Id.*) As such, Defendants argue the Amended Complaint should be dismissed.

---

[3] Defendants also take issue with Plaintiff's catchall provision for "other causes(s) of action that can be inferred from the facts set forth" since pursuant to Fed. R. Civ. P. 8(a), a Plaintiff is required to "include 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" (ECF No. 20 at 2, n.2.) For purposes of the Motion to Stay, this Court is only considering the causes of action plead in the Complaint, which appears to be one pursuant to 42 U.S.C. § 2000(d).

7

B. *Plaintiff's Pre-Motion Letter*

Plaintiff's pre-motion letter opposes the anticipated motion to dismiss and asserts that the claims have been adequately plead. (ECF No. 22 at 3.) In response to Defendants' arguments, Plaintiff maintains that Title VI does in fact apply to religious discrimination. Plaintiff particularly points to the OCR[4], which interprets Title VI to include religious discrimination, "if it is based on a group's "actual or perceived: (i) shared ancestry or ethnic characteristics; or (ii) citizenship or residency in a country with a dominant religion or distinct religious identity." (*Id.* at 1.)

Plaintiff's letter continued to list the allegations in her complaint regarding the discriminatory treatment conducted by the Defendants. (*Id.* at 2-3.) Plaintiff alleged that Muslim students who sought surgical specialties faced "more disciplinary actions than the other students especially Pakistani, Syrian, and Egyptian female students." (*Id.*) Plaintiff also alleges that Christian students receive more favorable treatment from the Defendants, "even if they showed lower academic progress." (*Id.*) Plaintiff then states that American non-Muslim students "who committed egregious misconduct, such as cheating on exams, [or] sexual harassment . . . were allowed to graduate, but Muslim students were closely monitored and expelled for less serious infractions." (*Id.*) Moreover, Plaintiff contends that Muslim students were "systematically assigned to non-hospital settings, office-based rotations, or hospitals lacking residency programs, which impaired their chances of securing desirable residency placements." (*Id.* at 3.) Among all the additional allegations, Plaintiff avers that she has sufficiently pled "a plausible cause of action for discrimination, and retaliation." (*Id.*)

---

[4] The undersigned interprets the OCR to be the Office of Civil Rights. However, Plaintiff has not provided the Court with such a definition and thus, this Court will not go on a scavenger hunt to determine the meaning of OCR.

Here, assuming the truth of the allegations as required, the undersigned finds that Plaintiff's claims may not survive a motion to dismiss. Though Plaintiff provides rather shocking incidents that her and other students allegedly dealt with, there is no concrete support for it. Plaintiff compares other students who are not of Muslim or similar origins to her, that may have received more favorable treatment. Yet, the allegations do not state specific instances but rather, her speculations of how the other students were treated. For example, no statistics were attached or direct evidence showing that on the one hand, non-Muslim students graduated while having cheating or bad conduct allegations and that, on the other hand, Muslim students were expelled for much less. Plaintiff also did not cite authority in their pre-motion letter that supports their position that the Motion to Dismiss would be denied. Plaintiff's sole case it cites to regarding intentional discrimination, *Alexander v. Sandoval*, 532 U.S. 275 (2001), does not discuss educational discrimination based on religion. Rather, it dealt with the Alabama Department of Public Safety administering state driver's license examinations only in English. *Id.* at 279-80. The Court there, focused on and held that "there is no private right of action to enforce disparate-impact regulations promulgated under Title VI." *Id.* at 293. Thus, Plaintiff fails to provide any guidance on how to determine whether the alleged discrimination is intentional or not.

Here, Plaintiff's conclusory and speculatory allegations do not meet the pleading requirements. *See Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988) ("naked allegation that appellees 'selectively enforc[ed] the College rules ... against plaintiffs ... because they are black [or] Latin' is too conclusory to survive a motion to dismiss."); *Bhatnagar v. Parsons Sch. of Design at the New Sch.*, No. 20 CIV. 2321 (LGS), 2021 WL 2333243, at *4 (S.D.N.Y. June 8, 2021) (finding Plaintiff's claim that Defendant's actions were motivated by Plaintiff's origin unpersuasive and conclusory absent factual allegations.); *Kajoshaj v. New York City Dep't of*

9

*Educ.*, 543 F. App'x 11, 13 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678) ("The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. … Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.")

Therefore, Defendants have shown that Plaintiff's claims are unmeritorious, and this factor *favors* a stay.

## II. <u>*Breadth of Discovery and the Corresponding Burdens*</u>

Next, discovery has barely taken place. As noted earlier, during the last Status Conference held on April 8, 2025, the parties admitted that due to the pending motion to dismiss, they have not begun to exchange document productions. Indeed, this includes initial disclosures.

According to Defendants, the burden of discovery falls squarely on their shoulders as "most evidence likely to be relevant to Plaintiff's claims . . . is within the custody of NYIT or its agents." (ECF No. 23-1 at 7.) Thus, Defendants argue that to respond to discovery demands and depositions, while they have a pending motion to dismiss "that could obviate the need for discovery, will require [them] to incur substantial legal fees and expend a significant amount of time . . ." (*Id.*) In other words, Defendants allege that to comply with discovery requests—that may end up being unnecessary if the Court grants their anticipated motion to dismiss—would be "enormously prejudicial to NYIT" and subversive of "the well-established premise that a defendant should not be subjected to the cost and burden of discovery unless a plaintiff has demonstrated a right to relief." (*Id.*) Again, given Plaintiff's lack of opposition, this factor also weighs in *favor* of granting the stay of discovery.

10

### III. *Risk of Unfair Prejudice*

Defendants assert that Plaintiff would not suffer any prejudice from a stay of discovery for two reasons. (ECF No. 23-1 at 8.) First, Plaintiff filed her Complaint two years after the alleged expulsion, which shows there is no urgency to expedite this litigation. Second, given that no discovery has taken place, the action is still in its early stages. Courts in this Circuit grant short stays that will be lifted upon the decision of a motion to dismiss and "neither unnecessarily delay the action nor prejudice the plaintiffs thereby." *Spencer Trask Software & Info. Servs., LLC v. Rpost Int'l Ltd.*, 206 F.R.D. 367 (S.D.N.Y 2002); *Nat'l Rifle Assn'n of Am. v. Cuomo*, 2020 WL 7338588, at *4 (N.D.N.Y. 2020). Here, given that Plaintiff has not expressed or identified any undue prejudice if this motion is granted, this Court finds no reason to deny the motion to stay discovery at this juncture. (*See* Electronic Order dated April 8, 2025.)

In sum, all three factors weigh in favor of granting a stay, and thus, the undersigned grants Defendants' Motion to Stay Discovery.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Stay (ECF No. 23) is **GRANTED.**

Dated: Central Islip, New York
       April 16, 2025

**S O   O R D E R E D:**

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge
