UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
MARWA BADR,

                             Plaintiff,

              v.                                    Civil Action No. 24-cv-05333 (JMA)(JMW)

NEW YORK INSTITUTE OF TECHNOLOGY,
NYIT-COM COLLEGE OF OSTEOPATHIC
MEDICINE,

                             Defendant.
-----------------------------------------------------------------------x


**DEFENDANT'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO DISMISS**


                                        CLIFTON BUDD & DeMARIA, LLP
                                        *Attorneys for Defendant*
                                        The Empire State Building
                                        350 Fifth Avenue, 61st Floor
                                        New York, New York 10118
                                        (212) 687-7410 (tel)
                                        (212) 687-3285 (fax)

**Counsel**:
Douglas P. Catalano
Stefanie R. Toren

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ........................................................................................................3

    I.     PLAINTIFF'S MEDICAL EXPERIENCE PRIOR TO HER ENROLLMENT AT NYITCOM ......................................................................3

    II.    PLAINTIFF ENROLLS AT AND IS SUBSEQUENTLY EXPELLED FROM NYITCOM .............................................................................................4

    III.   PLAINTIFF'S DISCRIMINATION AND RETALIATION ALLEGATIONS IN THE COMPLAINT ...........................................................6

ARGUMENT .........................................................................................................................10

    I.     THE STANDARD FOR EVALUATING A MOTION TO DISMISS ........................10

    II.    THE COMPLAINT FAILS TO ALLEGE PLAUSIBLE CLAIMS OF RELIGIOUS AND NATIONAL ORIGIN DISCRIMINATION UNDER TITLE VI REQUIRING THEIR DISMISSAL .................................................11

         A.    PLAINTIFF'S CLAIM OF RELIGIOUS DISCRIMINATION UNDER TITLE VI SHOULD BE DISMISSED AS TITLE VI DOES NOT PROHIBIT DISCRIMINATION BASED ON RELIGION .........................................................................................11

         B.    PLAINTIFF'S CLAIMS OF NATIONAL ORIGIN AND RELIGIOUS DISCRIMINATION UNDER TITLE VI SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ................................................................................................12

         1.    Standard To State a Claim Under Title VI ...........................................12

         2.    Plaintiff Fails to Plausibly Allege That She Was Discriminated Against By NYITCOM ...........................................................................................13

    III.   PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM OF RETALIATION UNDER TITLE VI .................................................................17

CONCLUSION ......................................................................................................................19

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Albert v. Carovano*,
   851 F.2d 561 (2d Cir.1988).............................................................................13

*Alexander v. Sandoval*,
   532 U.S. 275 (2001)....................................................................................12

*Algarin v. NYC Health + Hospitals Corp.*,
   678 F.Supp.3d 497 (S.D.N.Y. 2023)......................................................... 10, 11

*Annabi v. New York University*,
   2024 WL 4252062 (S.D.N.Y. September 20, 2024)...................................... 12, 13, 14, 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................. 10, 13, 14, 16

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................10

*Biswas v. City of New York*,
   973 F.Supp.2d 504 (S.D.N.Y. 2013)..................................................................12

*Bloomberg v. New York City Department of Education*,
   410 F.Supp.3d 608 (S.D.N.Y. 2019)..................................................................18

*Bohnet v. Valley Stream Union Free School Dist. 13*,
   30 F.Supp.3d 174 (E.D.N.Y. 2014) ....................................................................5

*DeLeon v. Teamsters Local 802*, LLC,
   2021 WL 1193191 (E.D.N.Y. March 29, 2021).....................................................11

*Diaz v. City Univ. of New York*,
   No. 15 Civ 1319 (PAC) (MHD), 2016 WL 958684 (S.D.N.Y. Mar. 8, 2016) ....................18

*E.E.O.C. v. Port Auth. of N.Y. & N.J.*,
   768 F.3d 247 (2d Cir. 2014)............................................................................10

*Gillingham v. Geico Direct*,
   2008 WL 189671 (E.D.N.Y. Jan. 18, 2008) ................................................ 5, 6, 7, 8

*Gregory v. Daly*,
   243 F.3d 687 (2d Cir.2001).............................................................................14

*Hill v. Curcione*,
   657 F.3d 116 (2d Cir. 2011)............................................................................10

*Kajoshaj v. New York City Dept. of Educ.*,
   543 Fed. Appx. 11 (2d Cir. 2013).............................................................passim

*Manolov v. Borough of Manhattan Community College*,
   952 F.Supp.2d 522 (S.D.N.Y. 2013)........................................................... 14, 15

*Mohamed v. Irving Independent School District*,
   300 F.Supp.3d 857 (N.D. Tex. 2018) ................................................................11

*Noakes v. Syracuse University*,
   369 F.Supp.3d 397 (N.D.N.Y. 2019)..................................................................16

*Palmer v. Penfield Cent. Sch. Dist.*,
   918 F. Supp. 2d 192 (W.D.N.Y. 2013)................................................................18

*Tolbert v. Queens Coll.*,
 242 F.3d 58 (2d Cir. 2001)...................................................................................................12

*Vengalattore v. Cornell University*,
 36 F.4th 87 (2d Cir. 2022)...................................................................................12, 16, 17

*Verdi v. City of New York*,
 306 F.Supp.3d 532 (S.D.N.Y. 2018).................................................................................18

*Walker v. Mirbourne NPN LLC*,
 2023 WL 11867001 (E.D.N.Y. February 27, 2023) .........................................................12

*Yang v. Ardizzone*,
 540 F.Supp.3d 372 (W.D.N.Y. 2021).................................................................................14

## **STATUTES**

42 U.S.C.A. § 2000d .................................................................................................................11

## **RULES**

Fed. R. Civ. P. 8(a) ...................................................................................................................17

Fed. R. Civ. P. 12(b)(6).................................................................................................1, 10, 11

## PRELIMINARY STATEMENT

Defendant New York Institute of Technology ("NYIT")[1], respectfully submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Corrected Amended Complaint (the "Complaint") with prejudice. Plaintiff Marwa Badr ("Plaintiff"), a former medical student at NYIT's College of Osteopathic Medicine ("NYITCOM"), alleges that NYIT discriminated against her based on her national origin and religion of being a "practicing Muslim Egyptian American" when it dismissed her from NYITCOM's Émigré Physicians Program (the "Program") in March 2022 purportedly in violation of Title VI of the Civil Rights Act of 1964 ("Title VI"). Am. Comp., ¶¶1-2, 25.

For the reasons set forth herein, Plaintiff's Complaint should be dismissed as she fails to set forth sufficient facts to state a plausible claim of religious or national origin discrimination or retaliation under Title VI. Plaintiff merely makes blanket, conclusory assertions that NYITCOM engaged in disparate treatment and harbored bias when it dismissed her from the Program after "two incidents" at her clinical clerkships. Specifically, Plaintiff alleges that one clinical clerkship prohibited Plaintiff from participating in any other clerkships in the same healthcare system due to Plaintiff's professionalism and other issues, which resulted in NYITCOM censuring Plaintiff. Plaintiff further alleges that NYITCOM expelled Plaintiff after she failed a clinical clerkship at another hospital for similar professionalism and performance issues. Significantly, Plaintiff fails to allege any facts from which to infer that NYITCOM treated similarly situated non-Egyptian and non-Muslim students more favorably. Any attempts by Plaintiff to bolster her claims by arguing that NYITCOM has demonstrated a pattern and practice of treating Middle Eastern and Muslim students less favorably also fails as Plaintiff only makes blanket

---

[1] NYIT's College of Osteopathic Medicine, incorrectly named herein as "NYIT-COM College of Osteopathic Medicine," is a college within NYIT and is not a separate legal entity.

assertions that NYITCOM engaged in this alleged disparate treatment without providing any factual support concerning such assertions.

Ultimately, Plaintiff's claims against NYITCOM are admittedly based on what Plaintiff herself terms a conspiracy theory. Am. Compl., ¶¶68-69, 81. Plaintiff contends that she suffered discrimination during her volunteer work at two universities prior to her enrollment at NYITCOM, as well as sued another medical center for wrongful dismissal from her residency position. Plaintiff further contends that these entities, notably unrelated to NYITCOM, acted in concert with the accrediting agency that oversees medical residency programs in the United States to retaliate against her by convincing NYITCOM to dismiss Plaintiff from the Program so that she would not be able to obtain a medical residency. Such allegations, while incredible and entirely speculative, in fact serve to defeat any claim that NYITCOM dismissed Plaintiff from the Program purportedly because of her religion and national origin. Plaintiff concedes that the purported real reason for NYITCOM's actions was so that these entities could "cover up for the discriminatory practices in southern universities" against international medical graduates, such as Plaintiff, and not due to any discriminatory animus by NYITCOM. *Id*. at ¶34.

Plaintiff's failure to provide any factual allegations in the Complaint to support a plausible claim that NYITCOM dismissed Plaintiff from the Program because of her religion or national origin or retaliated against her for engaging protected activity in violation of Title VI requires dismissal of the Complaint.

# STATEMENT OF FACTS[2]

## I. PLAINTIFF'S MEDICAL EXPERIENCE PRIOR TO HER ENROLLMENT AT NYITCOM

Plaintiff, an alleged "practicing Muslim Egyptian American," alleges in the Complaint that she completed medical school and obstetrics and gynecology residency training in Egypt before she emigrated to the United States in 2010. Am. Compl., ¶¶2, 16-17[3]. Plaintiff contends that it was difficult for her to obtain a medical residency position in the United States, a requirement in order to obtain a medical license in the United States. *Id*. at ¶¶17-18. Plaintiff alleges that she volunteered in clinics at Augusta University and the University of South Alabama (the "Southern Schools") for four years during 2011 through 2015, but did not receive a medical residency position. *Id*. at ¶¶17-19. According to Plaintiff, certain administrators at the Southern Schools informed her that the Southern Schools "do not hire International Medical Graduates (IMGs)" for residency positions. *Id*. at ¶19.

Plaintiff alleges that, thereafter, she obtained "a position in Obstetrics and Gynecology residency training at the Medical Center of Navicent Health in 2016" ("Navicent Health"), but was allegedly wrongfully dismissed after three months "in retaliation for raising her concerns regarding a toxic discriminatory work environment in her previous residency.[4]" *Id*. at ¶¶20-21. Plaintiff then sought the advice of Dr. Paul Browne ("Dr. Browne") at Augusta University and Dr. Elizabeth Lutz ("Dr. Lutz") at

---

[2] For purposes of this motion only, NYIT construes the facts that Plaintiff alleges in his Complaint as true. Any reference to such facts and citations alleged in the Complaint are based on this obligation and are not to be construed as an admission by NYIT that any of the facts alleged in the Complaint are true.

[3] A copy of the Corrected Amended Complaint is annexed to the Affirmation of Stefanie Toren as Exhibit A.

[4] It is unclear from a review of the Complaint whether Plaintiff is referring to another residency prior to her enrollment at NYITCOM.

the University of Mississippi who advised Plaintiff to apply to a medical school in the United States in order to obtain a medical residency position. *Id.* at ¶22.

## II.    PLAINTIFF ENROLLS AT AND IS SUBSEQUENTLY EXPELLED FROM NYITCOM

Plaintiff applied to and was accepted into NYITCOM's Program in January 2018. *Id.* at ¶¶12, 23. The Program is a four-year program at NYITCOM that retrains physicians born and educated outside of the United States, many of whom are of Middle Eastern national origin and/or Muslim, to become Doctors of Osteopathic Medicine. *Id.* at ¶¶12-13. As the purpose of the Program is to retrain international physicians, it cannot be disputed that NYITCOM was aware of Plaintiff's Egyptian national origin at the time she was accepted into the Program. Upon graduation from NYITCOM, students in the Program complete a medical residency, among other requirements, to obtain their medical license in the United States. *Id.*

Contrary to Plaintiff's assertion, Plaintiff did not "complete[] all her graduation requirements" at NYITCOM. *Id.* at ¶¶27, 68, 72. In March 2021, Plaintiff alleges that Catholic Health System reported "minor infractions" by Plaintiff to the Dean of NYITCOM concerning Plaintiff's participation in a clinical rotation at its hospital. *Id.* at ¶¶59-60. Thereafter, Plaintiff was allegedly "subjected to a series of ethical reviews by Catholic Health System during her clinical rotation."[5] *Id.* at ¶¶59-60. These alleged "minor infractions" included: (a) Plaintiff's failure to return identification badges; (b) Plaintiff's absence

_____

[5] Although not a party to this action, Plaintiff alleges that Catholic Health System wrongfully precluded her from participating in any clinical rotations within the Catholic Health System after she shared with her preceptors that she had been dismissed from her prior residency at Navicent Health. *Id.* at ¶¶48, 66. Plaintiff also contends that the CAO reported Plaintiff to NYITCOM in order to block Plaintiff's chances to obtain an obstetrics and gynecological residency at one of the hospitals within the Catholic Health System. *Id.* at ¶67. Plaintiff alleges that Catholic Health System treated her less favorably than a Christian American classmate as they allegedly did not report the student to NYITCOM when she arrived late for her schedule. *Id.* at ¶70. In addition, Plaintiff alleges that Catholic Health System was also influenced by ACGME, noting in the Complaint that Catholic Health System's actions "confirms the conspiracy orchestrated by the ACGME regarding the Plaintiff's expulsion." *Id.* at ¶69.

on President's Day; and (c) the Chief Academic Officer ("CAO") of Catholic Health System's belief that Plaintiff was "stalking" her by sending multiple emails requesting letters of recommendation. *Id.* at ¶ 67. Plaintiff alleges that the CAO of Catholic Health System also called Plaintiff "unprofessional" in an email to NYITCOM. *Id.* at ¶¶60-63, 117. As a result of Plaintiff's unprofessional conduct, Catholic Health System prohibited Plaintiff from participating in any further clinical rotations at its sites. *Id.* at ¶¶27, 59-60; Toren Aff., Ex. B[6]. After Plaintiff's alleged expulsion from Catholic Health System, NYITCOM censured Plaintiff concerning her behavior at Catholic Health System. *Id.* at ¶¶65, 68. Plaintiff contends that the disciplinary action of censure by NYITCOM was improper as Plaintiff only committed what she considered to be "minor infractions" at Catholic Health System. *Id.* at ¶¶65, 68.

Less than one year later, Plaintiff failed her final clinical rotation at Cedar Sinai Medical Center ("Cedar Sinai") for performance and professionalism issues. *Id.* at ¶¶27, 68, 72; Toren Aff., Ex. B. Plaintiff contends that Cedar Sinai did not inform Plaintiff of any performance concerns during her clinical rotation. *Id.* at ¶72-76. In addition, Plaintiff contends that Cedar Sinai did not offer Plaintiff the opportunity for remediation prior to failing the rotation, which allegedly is "standard protocol." *Id.* at ¶72-76.

Thereafter, in March 2022, NYITCOM dismissed Plaintiff from the Program two months prior to her graduation date. *Id.* at ¶¶13-14, 24, 33, 117. According to Plaintiff, NYITCOM informed Plaintiff

---

[6] References are to the March 3, 2022 letter from NYITCOM to Plaintiff notifying Plaintiff of her expulsion from the Program and the basis for NYITCOM's decision, which is attached to the Affirmation of Stefanie Toren as Exhibit B. In paragraph 14 of the Complaint, Plaintiff specifically refers to this document, calling it the "final termination letter." Am. Compl., ¶14 ("In the Defendant's final termination letter, NYIT-COM stated they expelled Dr. Badr for two clinical incidents."). A "court may only consider facts stated in the complaint or '[d]ocuments that are attached to the complaint or incorporated in it by reference.'" *Bohnet v. Valley Stream Union Free School Dist. 13*, 30 F.Supp.3d 174, 180 (E.D.N.Y. 2014), *aff'd*, 594 Fed. Appx. 53 (2d Cir. 2015)(citation omitted); *see also Gillingham v. Geico Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008)). Here, Plaintiff specifically refers to this dismissal letter, as well as what NYITCOM purportedly "stated" in the letter. As such, the letter is incorporated by reference into the Complaint and the Court may consider the letter on this motion to dismiss. For clarification, the letter is addressed to Sarah Adams, Plaintiff's name that she utilized during her time at NYITCOM. Am. Compl., ¶¶6, 9.

that she was being expelled due to the "two clinical incidents." *Id.* at ¶¶13-14, 24, 27, 33, 68, 72, 117. NYITCOM believed that Plaintiff continued to exhibit unprofessional behavior at Cedar Sinai after having been censured about similar professionalism issues at Catholic Health System. *Id.* at ¶¶13-14, 24, 27, 33, 68, 72, 117; Toren Aff., Ex. B. In the Complaint, Plaintiff also alleges that NYITCOM cited "challenging the authority" as another reason for her expulsion from the Program. *Id.* at ¶ 33. Plaintiff argues that the discipline imposed by NYITCOM, first censure then expulsion, was "draconian" and "unjustified." *Id.* at ¶¶ 68, 69, 81.

In addition to the "two incidents" at Catholic Health System and Cedar Sinai that, according to Plaintiff, NYITCOM explained was the reason for her expulsion from the Program, Plaintiff also alleges that prior to her dismissal from the Program NYITCOM wrongfully accused Plaintiff of falsifying her application to NYITCOM. *Id.* at ¶¶58, 86-101; Toren Aff., Ex. B. Specifically, Plaintiff alleges that NYITCOM improperly accused Plaintiff of failing to disclose on her NYITCOM application for the Program that Plaintiff had been dismissed from her prior residency at Navicent Health. *Id.* at ¶¶58, 86-101. Plaintiff concedes in the Complaint, however, that NYITCOM did not dismiss Plaintiff from the Program because of her alleged failure to disclose the dismissal from her prior medical residency as NYITCOM "stated in the final dismissal letter that the reasons for Plaintiff's dismissal were two hospital incidents during clinical rotation, not the application charge." *Id.* at ¶¶91(9), 101, 117; Toren Aff., Ex. B.

## III. PLAINTIFF'S DISCRIMINATION AND RETALIATION ALLEGATIONS IN THE COMPLAINT

The overarching theme in the Complaint is that the Southern Schools and the Accreditation Council for Graduate Medical Education ("ACGME"), the organization that oversees the accreditation of medical residency programs, are in concert and somehow convinced NYITCOM to expel Plaintiff from the Program to deprive her from obtaining a medical residency position. According to Plaintiff, "[u]pon information and belief, a third party, possibly the ACGME or another entity, is retaliating against

her for suing a previous medical center over wrongful dismissal." *Id*. at ¶34. Plaintiff also alleges that "external calls to expel Plaintiff from medical school to cover up for the discriminatory practices in southern universities against the IMGs are partly the reason behind her expulsion." *Id*. at ¶28. Specifically, Plaintiff alleges her belief that "ACGME exerted influence with NYITCOM to expel her in retaliation for rejoining medical school" after she suffered discrimination in the Southern Schools. *Id*. at ¶¶28-35, 40. She "reached this conclusion" because: (1) the Southern Schools denied her a residency because of being an international medical graduate[7]; and (2) she was expelled from the Program due to "unprofessionalism" after she failed her clinical rotation, which is what Dr. Browne, a faculty member at Augusta University, informed Plaintiff would happen, indicating a "collusion in the conspiracy." *Id*. at ¶¶28-35, 40, 46. Plaintiff also argues that the discipline imposed by NYITCOM, first censure then expulsion, was "draconian" and "unjustified," which confirmed "the conspiracy orchestrated by the ACGME regarding the Plaintiff's expulsion." *Id*. at ¶¶68, 69, 81.

Additionally, according to Plaintiff, "she was expelled [from NYITCOM] in retaliation for speaking up against the healthcare disparity against minorities in the South due to her Middle Eastern origin and her religion" because: (1) NYITCOM disciplined her after she mentioned to Catholic Health System (notably not NYITCOM) that she had been previously dismissed from a residency program during her time spent in the South; (2) NYITCOM "demonstrated a pattern of discriminating against Muslim Middle Eastern medical students who sought surgical specialties"; and (3) a classmate allegedly asked Plaintiff to convert to Christianity after she had been expelled from NYITCOM[8]. *Id*. at ¶¶ 47-48.

---

[7] Plaintiff alleges in the Complaint that evidence that the Southern Schools were involved with her expulsion from NYITCOM is that following her expulsion she received in the mail from an unidentified individual a book titled "My American Life, by Congresswoman Lauren Boebert, who Plaintiff contends made anti-Muslim remarks, from an Amazon affiliate in Alabama. *Id*. at ¶44.

[8] Plaintiff alleges that a student, A.S., had a "reputation" for being an "agent" for NYITCOM and tried to involve Plaintiff in unethical activities and entrap Plaintiff by offering her the answers to an examination. *Id*. at ¶¶54-57. The student also

In addition to claiming that ACGME influenced NYITCOM to expel Plaintiff in retaliation for allegedly suing a medical center concerning her dismissal from that institution prior to Plaintiff's enrollment at NYITCOM and "to cover up for the discriminatory practices" of the Southern Schools, of which Plaintiff does not allege that NYITCOM was aware, Plaintiff also alleges that NYITCOM discriminated against her based on her religion and national origin. Specifically, Plaintiff alleges that NYITCOM "expelled Plaintiff based on religious and national origin discrimination because [NYIT] perceived Plaintiff's shared ancestry and ethnic characteristics from Egypt, in which Islam is the dominant religion or district religious identity as intertwined." *Id*. at ¶¶26, 106, 131.

To support her claim, Plaintiff alleges that NYITCOM subjected Plaintiff to disparate treatment. *Id*. at ¶¶81-82. For example, Plaintiff alleges that all thirty-eight international physicians in the Program graduated from NYITCOM and obtained a residency position except for Plaintiff, which Plaintiff believes was discriminatory. *Id*. at ¶¶38, 115. Plaintiff also contends that she was subjected to disparate treatment based on her religion and national origin as an unidentified student purportedly failed an unidentified number of clinical rotations and was not expelled from NYITCOM. *Id*. at ¶¶81-82. Plaintiff admits, however, that NYITCOM did not graduate an unidentified student for failing a clinical rotation, similar to Plaintiff. *Id*. at ¶53. As further alleged evidence of disparate treatment, Plaintiff alleges that a Christian student failed his first year at NYITCOM and was able to graduate. *Id*. at ¶51, 108. Another student purportedly cheated on an examination and was not expelled from NYITCOM. *Id*. at ¶84. Additionally, Plaintiff alleges that NYITCOM failed to expel a student for a report of sexual harassment against him, as well as failed to expel another student for failing a course. *Id*. at ¶¶53, 83.

---

purportedly asked Plaintiff "if she should convert to Christianity because Islam is an evil religion" and the student's mother allegedly sent Plaintiff a bible." *Id*. at ¶¶54-57.

Plaintiff also contends that NYITCOM harbored bias. For example, Plaintiff contends that NYITCOM demonstrated bias when the Vice Dean allegedly stated that NYITCOM could not graduate more students if it did not expel Plaintiff. *Id*. at ¶64. Plaintiff contends that NYITCOM's investigation that led to her expulsion was biased as the Ethical Committee: (1) should have abstained from voting until all relevant documentation was received; (2) were not impartial as they were employees of NYIT; (3) were not all clinicians; and (4) refused to meet with Plaintiff. *Id*. at ¶100. Plaintiff also alleges that after Plaintiff was dismissed from NYITCOM, a member of the Ethical Committee, Felicia Bruno ("Bruno"), purportedly told Plaintiff, "[r]eturn to 'Egypt' where you came from" without providing any context in which this statement was allegedly made. *Id*. at ¶104.

Furthermore, Plaintiff alleges that NYITCOM demonstrated a pattern of discriminating against Muslim students, particularly Pakistani, Syrian and Egyptian female students. *Id*. at ¶¶107. For instance, Plaintiff makes the blanket assertion that NYITCOM expelled a male Muslim Egyptian student in 2012, 10 years prior to Plaintiff's dismissal, and a male Muslim Pakistani student in 2020, notably without providing any details surrounding the alleged basis for these students' expulsions. *Id*. at ¶¶52, 90. Plaintiff also alleges that certain Muslim students were "disproportionately subjected to disciplinary scrutiny," again, without providing any details concerning the alleged discipline or any comparators. *Id*. at ¶ 112. Plaintiff also makes a blanket assertion that Muslim students were assigned to clinical rotations that lacked residency programs which impaired their ability to secure a "desirable residency placement[]." *Id*. at ¶109. While Plaintiff contends this impacted her ability to "match" with a residency, Plaintiff concedes that it was her dismissal from the Program that precluded Plaintiff from graduating from NYITCOM, thereby impacting her ability to obtain a residency. *Id*. ¶¶109-11, 113-116.

**ARGUMENT**

## I.   THE STANDARD FOR EVALUATING A MOTION TO DISMISS

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept all facts as alleged in the Complaint as true and draw all reasonable inferences in Plaintiff's favor. *See e.g. Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). However, a complaint can survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) only if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a complaint need not make "detailed factual allegations," it must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action. *Id*. at 677-687 (*quoting Twombly*, 550 U.S. at 555). A Court should grant a motion to dismiss if the complaint provides factual allegations that lead to a "possible" but not "plausible" claim for relief. *Id.* at 678-79. A Court, though, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (*quoting Twombly*, 550 U.S. at 556). Plaintiff must assert in the Complaint, "at a minimum, 'nonconclusory factual matter' sufficient to 'nudge' the claim 'across the line from conceivable to plausible.'" *Algarin v. NYC Health + Hospitals Corp*., 678 F.Supp.3d 497, 508 (S.D.N.Y. 2023)(citing *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014)).

For the reasons set forth herein, Plaintiff's Complaint should be dismissed in its entirety as Plaintiff fails to allege plausible claims of discrimination based on her religion and national origin and retaliation in violation of Title VI.

## II. THE COMPLAINT FAILS TO ALLEGE PLAUSIBLE CLAIMS OF RELIGIOUS AND NATIONAL ORIGIN DISCRIMINATION UNDER TITLE VI REQUIRING THEIR DISMISSAL

Plaintiff's claims of religious and national origin discrimination under Title VI should be dismissed for failure to state a claim. Title VI provides that "[n]o person in the United States shall, on the ground of *race, color, or national origin*, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C.A. § 2000d (emphasis added). In order to defeat a Rule 12(b)(6) motion to dismiss under Title VI, Plaintiff must allege in the Complaint, "at a minimum, 'nonconclusory factual matter' sufficient to 'nudge' the claim 'across the line from conceivable to plausible.'" *Algarin*, 678 F.Supp.3d at 508. Plaintiff fails to do so as she merely speculates that her dismissal from the Program was attributable to discriminatory animus based on her national origin and religion. *See DeLeon v. Teamsters Local 802, LLC*, 2021 WL 1193191, *12 (E.D.N.Y. March 29, 2021). Accordingly, Plaintiff's Complaint should be dismissed.

### A. PLAINTIFF'S CLAIM OF RELIGIOUS DISCRIMINATION UNDER TITLE VI SHOULD BE DISMISSED AS TITLE VI DOES NOT PROHIBIT DISCRIMINATION BASED ON RELIGION

At the outset, Plaintiff's religious discrimination claim under Title VI should be dismissed as "Title VI does not, by its terms, proscribe religious discrimination…" *Kajoshaj v. New York City Dept. of Educ.*, 543 Fed. Appx. 11, n.2 (2d Cir. 2013); *see also Mohamed v. Irving Independent School District*, 300 F.Supp.3d 857, 895 (N.D. Tex. 2018). Rather, Title VI prohibits "race, color, or national origin" discrimination. 42 U.S.C.A. §2000d. While Plaintiff argues that her "shared ancestry and ethnic characteristics from Egypt, in which Islam is the dominant religion or district religious identity" are "intertwined," it cannot be disputed that Islam is Plaintiff's alleged religion and *not* her national origin or race. While Islam may be the predominant religion in Egypt and, as such, one may reasonably infer that

someone from Egypt also identifies as being Muslim, the same cannot be said for Plaintiff's religion. That one may observe the Muslim faith does not necessarily imply that the individual is from Egypt as Islam is practiced all over the world, including the United States.

**B. PLAINTIFF'S CLAIMS OF NATIONAL ORIGIN AND RELIGIOUS DISCRIMINATION UNDER TITLE VI SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM**

1. Standard To State a Claim Under Title VI

Even if the Court concludes that all of Plaintiff's claims fall within the purview of Title VI, Plaintiff still fails to state a plausible claim of national origin and religious discrimination. The U.S. Supreme Court has made clear that "Title VI itself directly reach[es] only instances of intentional discrimination." *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001)(citation omitted). Plaintiff has pleaded absolutely no factual allegations to support a plausible claim that NYIT or any of the alleged decisionmakers harbored any national origin or religious bias to establish a plausible claim that NYIT intentionally discriminated against her because of her Egyptian national origin or Muslim religion when it dismissed Plaintiff from the Program. *See Vengalattore v. Cornell University*, 36 F.4th 87, 109-111 (2d Cir. 2022).

"To state a claim for a violation of Title VI, a plaintiff must show, through specific factual allegations, that (1) the defendant discriminated on a prohibited basis; (2) the discrimination was intentional; and (3) the discrimination was a substantial and motivating factor for the defendant's action." *Walker v. Mirbourne NPN LLC*, 2023 WL 11867001, at *10 (E.D.N.Y. February 27, 2023)(citing *Biswas v. City of New York*, 973 F.Supp.2d 504, 531 (S.D.N.Y. 2013)) and *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001)); *see Kajoshaj*, 543 Fed. Appx. at 13. In order to survive a motion to dismiss, Plaintiff must "do more than recite conclusory assertions." *Annabi v. New York University*, 2024 WL 4252062, *6 (S.D.N.Y. September 20, 2024)(citation omitted). "[T]he plaintiff must specifically allege

the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of [national origin-based] discriminatory intent." *Id.*

2. <span style="text-decoration: underline">Plaintiff Fails to Plausibly Allege That She Was Discriminated Against By NYITCOM</span>

Here, Plaintiff has failed to plausibly allege that NYIT intentionally discriminated against Plaintiff because of her religion or national origin and that such alleged discrimination was a substantial and motivating factor in NYITCOM's decision to dismiss Plaintiff from the Program after being removed from clinical rotations at Catholic Health System for professionalism issues, among other issues, and after failing her final clinical rotation at Cedar Sinai and continuing to exhibit professionalism issues. Toren Aff., Ex. B. Plaintiff merely makes blanket, conclusory assertions that she was discriminated against based on her religion and national origin without providing any factual allegations to support such claims. Accordingly, Plaintiff's Title VI discrimination claims should be dismissed for failure to state a claim.

Courts in this Circuit have frequently dismissed Title VI claims when the plaintiff failed to allege any factual allegations from which to infer race or national origin discrimination. For example, in *Kajoshaj*, 543 Fed. Appx. at 14, the Second Circuit affirmed the District Court's dismissal of the plaintiff's complaint, noting that:

> [The plaintiff's allegations] "stop[ ] short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (internal quotation marks and citation omitted). Indeed, although plaintiffs repeatedly assert that defendants took those actions "because of" plaintiffs' Muslim faith and Albanian origin, Am. Compl. ¶ 26, J.A. 43, their complaint is devoid of factual allegations that would reasonably give rise to such an inference. Plaintiffs do not, for instance, assert that any defendant referenced their religion or national origin, much less that they did so in a derogatory manner. Thus, their "naked allegation" that they were treated differently from non-Muslim, non-Albanians cannot demonstrate a plausible entitlement to Title VI relief. *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir.1988) (stating that "naked allegation that appellees selectively enforced the College rules

- 13 -

against plaintiffs because they are black or Latin is too conclusory to survive a motion to dismiss" (alterations and internal quotation marks omitted)); *see Ashcroft v. Iqbal*, 556 U.S. at 681, 129 S.Ct. 1937 (rejecting "formulaic recitation" of elements of discrimination claim, "namely, that petitioners adopted a policy because of ... its adverse effects upon an identifiable group" (internal quotation marks omitted)); *Gregory v. Daly*, 243 F.3d 687, 692 (2d Cir.2001) (reiterating that "simple declaration that defendant's conduct violated the ultimate legal standard at issue (e.g., it was 'because of sex' ...) does not suffice").

*Id*. at 14; *see also Manolov v. Borough of Manhattan Community College*, 952 F.Supp.2d 522, 527 (S.D.N.Y. 2013)(dismissing Title VI claim when the plaintiff merely made conclusory assertions that he was discriminated against based on his race); *Annabi*, 2024 WL 4252062 (dismissing Title VI claim for failure to state a claim when the plaintiff failed to allege with specificity allegations of disparate treatment or any remarks that could indicate discriminatory animus); *Yang v. Ardizzone*, 540 F.Supp.3d 372, 380-381 (W.D.N.Y. 2021)(dismissing Title VI claim when the prospective student "pleaded no facts that would support an inference that he was discriminated against due to his…national origin.").

Similarly, here, the Complaint is "devoid of factual allegations that would reasonably give rise to an inference" of intentional discrimination by NYITCOM because of Plaintiff's Islamic faith and Egyptian national origin. *Id*. at 14. As acknowledged by Magistrate Judge James M. Wicks in his April 16, 2025 Memorandum and Order granting NYIT's motion for a stay of discovery (the "April 2025 Order"), and which analyzed NYIT's likelihood of success on its motion to dismiss the Complaint, although Plaintiff alleges certain incidents that Plaintiff and other students allegedly experienced, "there is no concrete support," for such allegations. April 2025 Order, p. 9. Magistrate Judge Wicks further noted:

> Plaintiff compares other students who are not of Muslim or similar origins to her, that may have received more favorable treatment. Yet, the allegations do not state specific instances but rather, her

speculations of how the other students were treated. For example, no statistics were attached or direct evidence showing that on the one hand, non-Muslim students graduated while having cheating or bad conduct allegations and that, on the other hand, Muslim students were expelled for much less.

*Id*. at p. 10.

Additionally, Plaintiff does not allege any derogatory or discriminatory comments made by any NYITCOM decisionmakers from which to infer bias. *See Kajoshaj*, 543 Fed.Appx. at 14; *Manolov*, 952 F.Supp.2d at 527. Although Plaintiff alleges in the Complaint that an alleged staff member after Plaintiff's expulsion purportedly told Plaintiff "Return to "Egypt" where you came from," Plaintiff does not allege that this alleged staff member had anything to do with her dismissal from the Program. Am. Compl., ¶104; *see Kajoshaj*, 543 Fed. Appx. at 15 ("plaintiffs have failed to allege that any person involved in those actions participated in the decision not to promote."). Nor does Plaintiff allege the context in which this statement was made since on its face such statement does not imply a discriminatory bias as it is a fact that Plaintiff previously completed her medical studies and residency in Egypt.

While Plaintiff makes blanket, conclusory assertions that NYIT "demonstrated [a] pattern of discriminating against the Muslim middle eastern medical students who sought surgical specialties," as well as treated Plaintiff less favorably than another unidentified student who allegedly failed his or her rotations, Plaintiff fails to allege any factual details as to the alleged disparate treatment. Plaintiff also fails to allege whether the students were similarly situated in all material respects, such as that the students were censured due to their behavior at a clinical clerkship and then continued to engage in similar behaviors at another clinical clerkship, similar to Plaintiff, and were not dismissed from the Program. Am. Compl., ¶¶47, 50-53, 81, 82; Toren Aff., Ex. B. Moreover, Plaintiff's allegations that NYITCOM treats Muslim and Middle Eastern

students less favorably are simply conclusory. Such naked allegations are insufficient to state a plausible claim of Title VI discrimination. *See Vengalattore*, 36 F.4th at 110; *Annabi*, 2024 WL 4252062 at *7 (dismissing Title VI claim when the "Plaintiff is unable to allege disparate treatment because he does not show that he was similarly situated to the individuals of a different…national origin…"); *see Noakes v. Syracuse University*, 369 F.Supp.3d 397, 417 (N.D.N.Y. 2019)(dismissing Title VI claim when plaintiff's allegations that the university disciplined black students more frequently than white students "are merely conclusory.").

Moreover, Plaintiff's admission that NYITCOM informed Plaintiff that she was being dismissed from the Program due to the two incidents at the Catholic Health System and Cedar Sinai "provide a more plausible explanation for" NYIT's decision to dismiss Plaintiff from the Program. *See Kajoshaj*, 543 Fed. Appx. at 14-15 (citing *Iqbal*, 556 U.S. at 681)). While Plaintiff might contend that these were "minor infractions" at Catholic Health System, this does not negate the fact that an unrelated hospital to NYITCOM complained about Plaintiff's professionalism and refused to allow Plaintiff to complete any other clinical rotations within its network of hospitals. In addition, Plaintiff's contention that she should have had the opportunity to "remediate" any performance issues at Cedar Sinai does not negate the fact that an unrelated hospital to NYITCOM deemed Plaintiff's performance at the clinical rotation to warrant a failing score.

Ultimately, the Complaint mostly concerns Plaintiff's alleged discriminatory treatment by the Southern Schools and ACGME's alleged cover-up of the mistreatment, none of which are parties to this case. NYITCOM is wholly unrelated to the Southern Schools and, as Plaintiff concedes, ACGME has "no direct oversight on medical schools" and, thus, could not have directed NYITCOM to retaliate against Plaintiff for her complaints about discriminatory treatment by other unrelated institutions. Am. Compl., ¶32. Significantly, Plaintiff's admission that this was

purportedly the reason for her dismissal from NYITCOM defeats any inference that NYITCOM's motivation to dismiss Plaintiff from the Program was her national origin and religion. Am. Compl., ¶¶28-35, 40, 46, 68-69, 81.

Magistrate Judge Wicks ultimately concluded in the April 2025 Order that: "Here, Plaintiff's conclusory and speculatory allegations do not meet the pleading requirements" under Title VI. April 2025 Order, p. 9. As the allegations in the Complaint provide "no basis for a plausible inference" that NYIT's alleged bias against Muslims and Egyptians was a factor in NYIT's decision to dismiss Plaintiff from the Program, NYIT respectfully requests that this Court should reach the same conclusion as in the April 2025 Order and dismiss Plaintiff's Title VI national origin and religious discrimination claims. *See Vengalattore*, 36 F.4th at 110.

## III. PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM OF RETALIATION UNDER TITLE VI

Although Plaintiff does not specifically assert a claim of retaliation under Title VI in the Complaint, the Complaint is replete with references to Plaintiff being retaliated against by multiple parties and for various reasons. Am. Compl., ¶¶21, 34, 40, 47, 59. To the extent that the Court infers such a retaliation claim based on Plaintiff's allegations in the Complaint,[9] NYIT respectfully submits that any such retaliation claim under Title VI should be dismissed for failure to state claim. While "Title VI does not contain an explicit anti-retaliation provision, [] courts have generally construed the statute as creating an implied private right of action for retaliation." *Bloomberg v. New York City Department of Education*, 410 F.Supp.3d 608, 624 (S.D.N.Y. 2019)(quoting *Palmer v. Penfield Cent. Sch. Dist*., 918 F. Supp. 2d 192, 199 (W.D.N.Y. 2013) (collecting cases)). To state a plausible claim of retaliation under

---

[9] Plaintiff asserts claims under Title VI "and any other cause(s) of action that can be inferred from the facts set forth herein." Am. Compl., ¶1. Pursuant to Fed. R. Civ. P. 8(a), Plaintiff is required to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Accordingly, the Rules do not permit this broad "catchall" alleged by Plaintiff. NYIT should not have to speculate as to the claims that Plaintiff is asserting.

Title VI, Plaintiff must allege: "(1) participation in a protected activity known to the defendants; (2) adverse action by the defendants against the plaintiff; and (3) a causal connection between the plaintiff's protect[ed] activity and defendants' adverse action." *Bloomberg*, 410 F.Supp.3d at 624 (quoting *Diaz v. City Univ. of New York*, No. 15 Civ 1319 (PAC) (MHD), 2016 WL 958684, at *2 (S.D.N.Y. Mar. 8, 2016)); *see Verdi v. City of New York*, 306 F.Supp.3d 532, 542 (S.D.N.Y. 2018).

Plaintiff fails to allege a plausible claim of retaliation under Title VI as Plaintiff concedes in her Complaint that ACGME, an unrelated entity to NYITCOM and an entity not a party to this case, retaliated against her "for suing a previous medical center over wrongful dismissal." Am. Compl., ¶34. To the extent that ACGME allegedly "exerted influence with NYITCOM to expel her in retaliation for rejoining medical school" and/or "to cover up for the discriminatory practices in southern universities against the IMGs," which NYIT denies occurred, nowhere within the Complaint does Plaintiff allege that NYIT was aware of any of Plaintiff's alleged protected activity, the first element of Plaintiff's requisite *prima facie* case. *Id.* at ¶¶28-35, 40. Specifically, nowhere within the Complaint does Plaintiff allege that she informed anyone at NYITCOM of her belief that the Southern Schools or ACGME discriminated against minorities in order to plausibly allege that NYIT was aware of Plaintiff's alleged protected activity.

Even if Plaintiff plausibly alleges in the Complaint that she engaged in protected activity, which NYIT denies, and that NYIT was aware of such protected activity, which NYIT also denies, Plaintiff has not plausibly alleged a causal connection between any such alleged protected activity and Plaintiff's dismissal from NYITCOM. *See Verdi*, 306 F.Supp.3d at 542-543. Plaintiff has provided absolutely no link between any unidentified complaint about discrimination by the Southern Schools, notably not by NYITCOM, and NYITCOM's decision to dismiss Plaintiff from the Program. As discussed above, Plaintiff was removed by one clinical rotation due to her professionalism, among other reasons, and, as

a result, censured by NYITCOM. Thereafter, Plaintiff failed a second clinical rotation due to performance issues. As Plaintiff continued to exhibit a pattern of unprofessional behaviors at her clinical clerkships, despite being censured concerning such behaviors, NYITCOM made the decision to dismiss Plaintiff from the Program. Toren Aff., Ex. B. Plaintiff's failure to plausibly allege a *prima facie* case of retaliation under Title VI requires dismissal of this claim, to the extent that Court construes Plaintiff as having even alleged such a retaliation claim.

## <u>CONCLUSION</u>

For the reasons set forth herein, NYIT respectfully requests that this Court dismiss the Corrected Amended Complaint in its entirety, with prejudice, and award NYIT such other relief as this Court deems just and proper.

Dated: New York, New York
       April 25, 2025

Respectfully Submitted,
CLIFTON BUDD & DeMARIA, LLP
*Attorneys for Defendant NYIT*

By: _____
      Douglas P. Catalano
      Stefanie R. Toren