FILED
CLERK
12/10/2025
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

MARWA BADR,

          *Plaintiff*,

          -against-

NEW YORK INSTITUTE OF TECHNOLOGY,
NYIT-COM COLLEGE OF OSTEOPATHIC
MEDICINE,

          *Defendants*.

-------------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

24-CV-05333 (JMA) (JMW)

**A P P E A R A N C E S:**

    Stewart Lee Karlin
    **Stewart Lee Karlin, Law Group PC**
    111 John Street 22nd Floor
    New York, NY 10038
    *Attorney for Plaintiff*

    Douglas Peter Catalano
    Stefanie Robin Toren
    **Clifton Budd & DeMaria LLP**
    350 Fifth Avenue, Suite 6110
    New York, NY 10118
    *Attorney for Defendants*

**WICKS**, Magistrate Judge:

Plaintiff Marwa Badr, also known as Sarah Adams ("Plaintiff") commenced this action against Defendants New York Institute of Technology ("NYIT") and NYIT-COM College of Osteopathic Medicine ("NYIT-COM" and collectively, "Defendants"),[1] alleging discriminatory

---

[1] Defendants previously informed the Court that NYIT's College of Osteopathic Medicine, incorrectly named as "NYIT-COM College of Osteopathic Medicine," is a college within NYIT and is not a separate legal entity. (ECF No. 23 at 1.)

1

conduct in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000(d), *et seq.* ("Title VI") and "any other cause(s) of action that can be inferred from the facts set forth herein", and seeks damages as well as injunctive relief. (*See generally*, ECF No. 19.) Before the Court by way of referral from the Hon. Joan M. Azrack is Defendants' Motion to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 28). (*See* Electronic Order dated 10/21/2025.) Plaintiff opposed the motion (ECF No. 29), and Defendants filed their reply (ECF No. 30). For the reasons set forth below, the undersigned respectfully recommends that the Motion to Dismiss (ECF No. 28) be **GRANTED**.

## BACKGROUND

### I. Factual Background

The Court details the following allegations from the Amended Complaint. which are assumed true for the purposes of this Motion to Dismiss. (ECF No. 19.) Plaintiff's suit arises from her time as a medical student at NYIT-COM from 2018 until March 22, 2022. (*Id.* at ¶¶ 12-14.) Plaintiff, a Muslim woman originally from Egypt, was a fourth-year medical student, when she was expelled from her program two months before her scheduled graduation. (*Id.* at ¶¶ 6, 25.) Plaintiff was part of the NYIT-COM's Émigré Physicians Program ("EPP"), "a unique initiative designed to retrain internationally educated doctors as a Doctor of Osteopathic Medicine in residency training." (*Id.* at ¶ 12.) Plaintiff primarily alleges that she was expelled from the program due to the Defendants' discriminatory practices related to her religious and national origin. (*Id.* at ¶ 26.) Plaintiff was informed that the reason for her dismissal was "[her] failure of the last clinical rotation at Cedar Sinai and the incident in another rotation at Catholic Health System." (*Id.* at ¶ 27.)

Plaintiff, however, disputes that this was the true reason for her dismissal; rather, she alleges that her expulsion was the result of a conspiracy between her medical school and the Accreditation Council for Graduate Medical Education (ACCGME), aimed solely at covering up the "discriminatory practices in southern universities against" International Medical Graduates that she personally complained of in her prior medical program in Alabama. (*Id.* at ¶¶ 19-21, 28-32.) Plaintiff believes that her expulsion was a result of this conspiracy based on four reasons:

> (1) The disciplinary action started after she mentioned her prior expulsion from residency in the south[2], (2) NYIT-COM demonstrated a pattern of discriminating against Muslim Middle Eastern medical students who sought surgical specialties. Students from Egypt, Syria, and Pakistan, compared to non-Muslim students, were not under the same discriminatory treatment, (3) NYIT targeted the student, using a classmate who asked the student to convert to Christianity after expulsion, [and] (4) Capricious expulsion with evidence of external influence is the strongest evidence to support the systematic targeting of Muslims in educational settings. A sudden interruption of the Plaintiff's education defamed her character as a Muslim scholar.

(*Id.* at ¶ 47.) Based on this alleged discriminatory conduct, Plaintiff asserts one claim against the Defendants for a violation of Title VI and "any other cause(s) of action that can be inferred from the facts set forth herein." (*Id.* at ¶ 1.)

## II. **Procedural Background**

Plaintiff commenced this action on July 30, 2024. (ECF No. 1.) Defendants requested a pre-motion conference to dismiss the Complaint. (ECF No. 9.) Plaintiff thereafter amended the Complaint on November 22, 2024. (ECF No. 19.) Defendants again filed a pre-motion conference letter to dismiss the Amended Complaint (ECF No. 21), which Plaintiff opposed (ECF No. 22). Judge Azrack initially granted a pre-motion conference (*see* Electronic Order dated 3/14/2025), and shortly after, waived the required and set a briefing schedule. (Electronic Order dated 4/1/2025.) On April 7, 2025, Defendants subsequently moved to stay discovery

---

[2] It remains unclear why Plaintiff was expelled from the Alabama University.

pending the outcome of their anticipated Motion to Dismiss (ECF No. 23), Plaintiff took no position as to the stay (*see* Electronic Order dated 4/8/2025) which the Court ultimately granted (ECF No. 25). On June 12, 2025, Defendants filed their moving papers pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 28), Plaintiff filed her opposition (ECF No. 29), and Defendants filed their reply (ECF No. 30). [3] On October 21, 2025, the Motion to Dismiss was referred to the undersigned for a Report and Recommendation. (*See* Electronic Order dated 10/21/2025.) Oral argument on the Motion was originally scheduled for December 17, 2025, but due to a conflict in the Plaintiff's schedule, oral argument was cancelled. (*See* ECF Nos. 32-33; Electronic Order dated 12/9/2025.)

## THE LEGAL FRAMEWORK

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also CompassCare v. Hochul*, 125 F.4th 49, 56-57 (2d Cir. 2025) (quoting *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014) ("a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.")).

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Annabi v. New York Univ.*, No. 24-cv-2601, 2025 WL 1066083, at *1 (2d Cir. Apr. 9, 2025) (quoting *Iqbal*, 556 U.S. at 678). To that end, complaints are properly dismissed where, as a matter of law, "the allegations in a

---

[3] Plaintiff, ex-parte, filed a letter to the Court regarding the instant motion. As Plaintiff is represented by counsel, the Court will not include this entry in its recommendation. (*See* ECF No. 31.)

complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When considering a motion to dismiss under 12(b)(6), the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, this tenet does not apply to legal conclusions or "threadbare recitals of a cause of action's elements." *Iqbal*, 556 U.S. at 663. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. More is required. Put differently, "while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions. … Factual allegations must be enough to raise a right to relief above the speculative level. To survive dismissal, a complaint must provide enough facts to state a claim to relief that is plausible on its face." *Go New York Tours Inc. v. Gray Line New York Tours, Inc.*, No. 24-cv-2392, 2025 WL 947083, at *2 (2d Cir. Mar. 27, 2025) (quoting *Mayor & City Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013)).

## **DISCUSSION**

Defendants move to dismiss the Amended Complaint on the grounds that (i) Title VI does not prohibit discrimination based on religion, and (ii) Plaintiff fails to plead facts supporting a plausible claim of discrimination or retaliation in connection with religion or national origin under Title VI. (ECF No. 28-4 at 1, 11.) Defendants contend that Plaintiff relies solely on conclusory assertions that NYIT-COM treated her differently because of her religion and ethnicity following two clinical incidents involving professionalism and performance concerns. (*Id.* at 1-2.) Further, Defendants assert that the allegations amount to a speculative conspiracy theory. (ECF No. 30 at 1-2.) In sum, Defendants aver that since Plaintiff identifies no derogatory

remarks connected to her dismissal, alleges no similarly situated comparator outside her protected class, and fails to show a nexus between her protected status and the adverse action, the Amended Complaint fails to state a plausible claim under Title VI. (ECF Nos. 28-4 at 1-2; 30 at 1-3.)

Under Title VI, "[n]o person in the United States shall, *on the ground of race, color, or national origin*, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Salem v. New York Univ.*, No. 22-CV-5112 (VEC) (SLC), 2023 WL 8438713, at *6 (S.D.N.Y. Sept. 15, 2023), *report and recommendation adopted*, No. 22-CV-5112 (VEC), 2023 WL 8253026 (S.D.N.Y. Nov. 29, 2023) (quoting 42 U.S.C. § 2000d) (emphasis added). With that, only entities receiving federal assistance may be sued under Title VI. *Khen v. US Coachways, Inc.*, No. 23-CV-10762 (JLR), 2025 WL 252901, at *11 (S.D.N.Y. Jan. 21, 2025). For a claim to survive under Title VI, particularly in the education context, "direct evidence of discriminatory conduct [is required]." *Koumantaros v. City Univ. of New York*, No. 03-CV-10170 (GEL), 2007 WL 840115, at *8 (S.D.N.Y. Mar. 19, 2007). Direct evidence is "evidence sufficient to allow the jury to find that the decision makers placed substantial negative reliance on [the plaintiff's national origin] in reaching their decision." *Astraee v. Villanova Univ.*, 509 F. Supp. 3d 265 (E.D. Pa. 2020) (citing *Fakete v. Aetna, Inc.*, 308 F. 3d 335, 338 (3d. Cir. 2002) (alteration in original)). However, in cases where no such evidence exists, courts have allowed a plaintiff to show:

> (1) she is a member of a protected class; (2) she suffered an adverse action in pursuit of her education by defendant; (3) she was treated differently from similarly situated students who are not members of the protected class; and (4) she was qualified to continue in her educational pursuit.

*Koumantaros*, 2007 WL 840115, at *8.

Importantly, the discrimination alleged must have been intentional. *Tolbert v. Queens Coll.,* 242 F.3d 58, 69 (2d Cir. 2001) (collecting cases); *Salem*, 2023 WL 8438713, at *6 (same); *see also Canaan v. Carnegie Mellon Univ.*, 760 F. Supp. 3d 306 (W.D. Pa 2024) (citing *Blunt v. Lower Merion Sch. Dist.*, 767 F. 3d 247, 272 (3d Cir. 2014) ("Intentional discrimination may be established by showing deliberate indifference without satisfying a higher burden of proving spite, ill-will, or other indicia of animus.")).

I. **Title VI – Discrimination based on National Origin**

To establish a claim under Title VI, a plaintiff must plausibly allege that "(1) the defendant discriminated on the basis of national origin; (2) the discrimination was intentional; and (3) discrimination was a substantial or motivating factor for the defendant's actions." *New York by Schneiderman v. Utica City Sch. Dist.*, 177 F. Supp. 3d 739, 752 (N.D.N.Y. 2016) (citing *Manolov v. Borough Of Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 531 (S.D.N.Y. 2013)); *see also Cain v. Mercy Coll.*, No. 20-CV-2262 (LLS), 2020 WL 4194637, at *4 (S.D.N.Y. July 20, 2020) (quoting *Tolbert*, 242 F.3d at 69) (same); *Muhammad v. Trs. of Columbia Univ.*, No. 24-CV-7852 (JGK), 2025 WL 2781383, at *3 (S.D.N.Y. Sept. 30, 2025) (outlining the elements).

A plaintiff need only provide "plausible support [for] a minimal inference of discriminatory motivation." *Johnson v. New York Univ.*, No. 17-CV-6184 (VEC)(GWG), 2018 WL 3966703, at *7 (S.D.N.Y. Aug. 20, 2018), *report and recommendation adopted*, No. 17-CV-6184 (VEC), 2018 WL 4908108 (S.D.N.Y. Oct. 10, 2018), *aff'd*, 800 F. App'x 18 (2d Cir. 2020) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015)). However, conclusory and speculatory allegations are insufficient. *Id.*; *see Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988) (holding that a "naked allegation that appellees 'selectively enforc[ed]

7

the College rules ... against plaintiffs ... because they are black [or] Latin' is too conclusory to survive a motion to dismiss"); *see also Bhatnagar v. Parsons Sch. of Design at the New Sch.*, No. 20-CV-2321 (LGS), 2021 WL 2333243, at *2 (S.D.N.Y. June 8, 2021) (quoting *E.E.O.C. v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 254 (2d Cir. 2014) ("a discrimination complaint must still at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed")).

Plaintiff fails to allege any facts supporting an inference of intentional discrimination based on national origin or any "intertwined" identity. (ECF No. 29 at 10.) The only far-fetched allegation is that after Plaintiff was expelled from the program, faculty member Felecia Bruno of the Ethical Committee, allegedly stated that Plaintiff should return to Egypt. (ECF No. 19 at ¶ 104.) While if true, is unacceptable behavior on any level, there is no evidence that this faculty member was part of the decision making leading to Plaintiff's expulsion. Indeed, the March 3, 2022, expulsion letter to Plaintiff lists two "charges" that Defendants found Plaintiff "guilty" of. (*See* ECF No. 28-3.) The two charges were based on inappropriate social media posts, unprofessional behavior, and false information on Plaintiff's application. (*Id.*) These incidents – not discrimination – led to the unfortunate consequence of expulsion.

In *Bhatnagar*, the court dismissed similar allegations where the plaintiff claimed discrimination based on national origin but failed to support her claim with factual detail. 2021 WL 2333243, at *4. The Court found that the complaint did not plausibly allege even a minimal inference of discrimination and merely recited the legal standard, noting that the defendant's actions were more plausibly explained by concerns about the plaintiff's mental stability than by any discriminatory motive. *Id*. at *3. The same reasoning applies here. Plaintiff's allegations rests on speculation rather than factual detail. *See Kajoshaj v. New York City Dep't of Educ.*, 543

F. App'x 11, 13 (2d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678) (finding that plaintiff did not plead a Title VI claim) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.")

Furthermore, Plaintiff provides no direct or statistical evidence that similarly situated non-Muslim students were treated more favorably, nor does she identify any specific incidents demonstrating disparate treatment. *See Ikedilo v. Statter*, No. 19-CV-9967 (RA), 2020 WL 5849049, at *9 (S.D.N.Y. Sept. 30, 2020) (finding that plaintiff's complaint lacked any facts that "would give rise to an inference of discrimination"); *Mumid v. Abraham Lincoln High Sch.*, 618 F.3d 789, 794 (8th Cir. 2010) (holding that plaintiffs failed to identify "a person not a member of the same allegedly protected class—who was treated more favorably than the plaintiffs…").

In fact, Plaintiff offers only conclusory assertions that NYIT-COM's actions were motivated by her national origin, unsupported by any specific comparators, incidents, or statements evidencing bias. *Cf. Minto v. Molloy Coll.*, No. 16-CV-276 (KAM)(AYS), 2021 WL 1394329, at *11 (E.D.N.Y. Jan. 21, 2021), *report and recommendation adopted,* No. 16-CV-276, 2021 WL 804386 (E.D.N.Y. Mar. 3, 2021) (denying a motion to dismiss where the plaintiffs provided the Court with four comparators who were not expelled from the program) ("In sum, Plaintiffs point to a variety of students, none of whom are African-American females over the age of forty, and all of whom are alleged to have been treated differently and afforded specific opportunities denied to Plaintiffs."); *New York by Schneiderman*, 177 F. Supp. 3d at 752 (finding plaintiffs stated a plausible claim where the complaint alleged that the defendant district directed subordinates to divert immigrant students to alternative and unequal education settings).

Plaintiff's speculation that disciplinary decisions stemmed from discriminatory animus, rather than legitimate academic or professional considerations, is insufficient. *See Vengalattore v. Cornell Univ.*, 36 F.4th 87, 110 (2d. Cir. 2022) (affirming dismissal of Title VI claim as allegations did not demonstrate that the decisionmaker who denied tenure to plaintiff "harbored any national origin bias.") The mere existence of an adverse action – her expulsion – may not alone give rise to a plausible inference of discrimination. *See Pierce v. Woldenburg*, No. 11-CV-4248 (SJF)(AKT), 2012 WL 3260316, at *3 (E.D.N.Y. Aug. 7, 2012) ("plaintiff offers no factual allegations supporting his belief that he suffered discrimination on the basis of his ethnic origin and/or religion. … Of course, such a flimsy set of allegations, coupled with such sheer speculation, is insufficient to state a claim under Title VI.")

Moreover, Plaintiff's reliance on *Alexander v. Sandoval*, 532 U.S. 275 (2001) is misguided. That case addressed the Alabama Department of Public Safety administering state driver's license examinations only in English. *Id.* at 279-80. That Court held that "there is no private right of action to enforce disparate-impact regulations promulgated under Title VI." *Id.* at 293. It did not concern, much less support, claims of intentional discrimination in an educational context. Accordingly, Plaintiff has failed to sufficiently plead a plausible claim of discrimination based on national origin under Title VI.

## II. Title VI – Discrimination based on Religion

In response to Defendants' arguments that "Title VI does not, by its terms, proscribe religious discrimination" (ECF No. 28-4 at 11), Plaintiff invokes the guidance of the Office of Civil Rights ("OCR"), asserting that Title VI may apply to religious discrimination when it is based on a group's "actual or perceived: (i) shared ancestry or ethnic characteristics; or (ii) citizenship or residency in a country with a dominant religion or distinct religious identity."

(ECF No. 29 at 10.) However, apart from that, Plaintiff does not offer any legal authority to support her claims. To that very end, the Court has not independently found any authority indicating that a discrimination claim under Title VI includes religion. Case law directs quite the opposite conclusion. *See Bibliotechnical Athenaeum v. Am. Univ. of Beirut*, 527 F. Supp. 3d 625, 632 n.3 (S.D.N.Y. 2021), *aff'd*, No. 21-1642, 2022 WL 710896 (2d Cir. Mar. 10, 2022) ("Unlike Title VII, Title VI does not refer to discrimination because of sex or religion."); *Am. Ass'n of Univ. Professors v. United States Dep't of Just.*, No. 25-CV-2429 (MKV), 2025 WL 1684817, at *15 (S.D.N.Y. June 16, 2025) ("Title VI does not mention religion."); *see also Mohamed for A.M. v. Irving Indep. Sch. Dist.*, 300 F. Supp. 3d 857, 895 (N.D. Tex. 2018), *aff'd sub nom. Mohamed as Next Friend for A.M. v. Irving Indep. Sch. Dist.*, 758 F. App'x 352 (5th Cir. 2019) (internal citations omitted) (finding that plaintiff's conclusory allegations did not meet the intentional discrimination requirement for a Title VI claim based on race) ("Title VI does not proscribe discrimination based on religion"); *Lubavitch-Chabad of Illinois, Inc. v. Nw. Univ.*, 6 F. Supp. 3d 806, 816 (N.D. Ill. 2013), *aff'd*, 772 F.3d 443 (7th Cir. 2014) (finding plaintiffs' claim failed because their claims rested entirely on alleged religious discrimination) ("Title VI does not provide for protection against discrimination on the basis of religion—only on the basis of race, color, or national origin").

Plaintiff argues that she has plausibly alleged intentional discrimination based not solely on religion, but also on national origin, stating an alleged pattern of disproportionately harsh disciplinary measures against Muslim and Middle Eastern students (*e.g.*, Egyptian, Pakistani, Syrian) at NYIT-COM compared to non-Muslim students. (ECF No. 29 at 11.) She further contends that her "shared ancestry and ethnic characteristics from Egypt," where "Islam is the dominant religion or distinct religious identity," support her claim by demonstrating the

11

connection between her religion and national origin. (ECF Nos. 28-4 at 11; 29 at 10.) Yet Plaintiff advances no facts suggesting that NYIT-COM's actions were actually motivated by her religion or her national origin, rather than legitimate concerns regarding performance and professionalism. *See Kajoshaj*, 543 F. App'x at 14 ("Their 'naked allegation' that they were treated differently from non-Muslim, non-Albanians cannot demonstrate a plausible entitlement to Title VI relief.") Plaintiff's assertion that NYIT-COM perceived her religion and ethnicity as intertwined does not transform a religion-based claim into one actionable under Title VI, particularly absent factual allegations or legal authority showing that the school's actions were motivated by her national origin or religion.

Accordingly, upon a plain reading of Title VI, the Court concludes that Plaintiff has not stated a claim for discrimination based on religion.

### III. <u>Plausibility of a Retaliation Claim</u>

Defendants argue that, to the extent the Court construes the Complaint as asserting a retaliation claim under Title VI, that claim should too be dismissed for failure to state a claim. (ECF Nos. 28-4 at 17; 30 at 8.) A retaliation claim under Title VI requires a plaintiff to "allege that [he] engaged in protected activity, [Defendants] knew about [his] protected activity, [he] suffered an adverse action, and there was 'a causal connection between the protected activity and the adverse action.'" *DuBose v. SUNY Mar. Coll. Off. of Fin. Aid*, No. 24-CV-05547 (JLR), 2025 WL 1488983, at *7 (S.D.N.Y. May 23, 2025) (citing *Bloomberg v. N.Y.C. Dep't of Educ.*, 119 F.4th 209, 215 (2d Cir. 2024)).

Even assuming that Plaintiff's complaints about discrimination constitute a protected activity, Defendants correctly observe that there are no allegations that NYIT was *aware* of any purported or protected activity or that she ever reported such activity to NYIT. (ECF No. 30 at

12

8–9.) Awareness is necessary for a retaliation claim; without it, there can be no basis for asserting that any adverse action was taken in response to a protected activity. The keyword in cases analyzing retaliation claims is "known" and thus, if a defendant is unaware of a protected activity, the first element is not met. *See Diaz v. City Univ. of New York*, No. 15-CV-1319 (PAC)(MHD), 2016 WL 958684, at *2 (S.D.N.Y. Mar. 8, 2016) (citations omitted) (emphasis added) ("A Title VI claim can also be brought for retaliation, which requires that a plaintiff plausibly allege: '(1) participation in a protected activity *known* to the defendants; (2) adverse action by the defendants against the plaintiff; and (3) a causal connection between the plaintiff's protect[ed] activity and defendants' adverse action.'"); *Morales v. NYS Dep't of Lab.*, 865 F. Supp. 2d 220, 252 (N.D.N.Y. 2012), *aff'd sub nom. Morales v. New York State Dep't of Lab., Div. of Emp. Servs.*, 530 F. App'x 13 (2d Cir. 2013) (same); *see also Peters v. Molloy Coll. of Rockville Ctr.*, No. 07-CV-2553 (DRH)(ETB), 2008 WL 2704920, at *12 (E.D.N.Y. July 8, 2008) ("The Complaint alleges that upon information and belief, all Defendants were aware of Plaintiff's vocal opposition to the adverse treatment afforded Dr. Pemberton. These allegations are sufficient to satisfy the awareness element of a retaliation claim."); *Ellis v. Univ. of Rochester*, No. 19-CV-6380 (CJS), 2024 WL 493504, at *26 n. 117 (W.D.N.Y. Feb. 8, 2024) (internal citations omitted) ("A retaliation plaintiff must show that the funding recipient or its representatives took an adverse action against him because he complained of discrimination. That typically means the funding recipient itself signed off on the adverse action.").

Moreover, Plaintiff does not plead any facts that could establish a causal connection between an alleged protected activity and the adverse action.

> Plaintiff may show a causal connection either (1) *indirectly,* by presenting evidence of temporal proximity between the protected activity and adverse action, or through other evidence such as different treatment of similarly situated students, or (2) *directly,* through evidence of retaliatory animus directed against ... plaintiff by the

defendant. Even if plaintiff satisfies the *prima facie* test for retaliation, if defendant offers a legitimate, non-retaliatory reason for the adverse action, the presumption of retaliation drops from the case. Plaintiff still may succeed on the retaliation claim, but only if she can show that defendant's legitimate reason for the adverse action was in fact merely a pretext for retaliation.

*Koumantaros*, 2007 WL 840115, at *10 (internal citations omitted).

Here, the Amended Complaint contains no support for allegations of temporal proximity, disparate treatment, or any direct evidence of retaliatory animus. (*See* ECF No. 19 at ¶ 47.) Rather, Plaintiff speculates and states "[she] believes that she was expelled in retaliation for speaking up … [and the] disciplinary action started after she mentioned her prior expulsion from residency in the south." (*Id.*) Absent here is any direct or indirect evidence of retaliation and thus, Defendants do not need to offer a legitimate reason. *See Koumantaros*, 2007 WL 840115, at *10; *Johnson*, 2018 WL 3966703, at *8 ("Johnson has alleged no facts suggesting a causal connection, either directly or indirectly, between the filing of his lawsuit and the denial of his application for readmission. Essentially, all that he has alleged is that he engaged in protected activity at one time and that an adverse action occurred later.") Therefore, Plaintiff's assertion that there is a causal connection is without merit. (ECF No. 29 at 17.) And, as noted earlier, Plaintiff's Complaint does not explicitly assert a retaliation claim under Title VI. Thus, a retaliation claim under Title VI if pled properly, would also lead to a recommendation of dismissal for failure to state a claim.

## **CONCLUSION**

For the foregoing reasons, the undersigned respectfully recommends that Defendants' Motion to Dismiss (ECF No. 28) be **GRANTED**.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served through ECF on all counsel. Any written objections to this Report and Recommendation must be filed within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. 2011); Fed. R. Civ. P. 6(a), 72(b); *see also Nambiar v. The Central Orthopedic Group LLP*, No. 24-1103 (2d Cir. Oct. 28, 2025) (addressing timing and scope of objections to Reports and Recommendations). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days precludes further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (summary order) (same).

Dated: Central Islip, New York.
December 10, 2025

**RESPECTFULLY RECOMMENDED**,

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge